**No. 57607.**—J. E. Bernard & Co., Inc. *v.* United States, protest 190501–K (New York).

Oliver, Chief Judge: The factual situation in this case is embodied in a stipulation entered into by the respective parties, the pertinent parts of which are as follows:

T. S. Foulkes imported on the S/S Caronia at the Port of New York certain merchandise entered under Consumption Entry No. 704736 dated July 11, 1951. The entry was made in the name of J. E. Bernard & Co. Inc., licensed Customs House broker for the account of T. S. Foulkes. The merchandise was described on the Consular invoice as 250,000 18% Nickel Silver Temple Cores, packed in 5 cases each case containing 50,000 cores and invoiced at £421-17-6.

The merchandise was described on the entry as five cases containing 250,000 pieces of Spectacle Frames; valued at $1182; entered under paragraph 225; at a rate of 20% ad valorem; estimated duty $236.40.

The appraiser described the merchandise on his return of the invoice as "parts of spectacle frames". He found the value to be correct as entered and the quantity to be correct as entered. He did advisorily classify the merchandise and he noted "par. 225 C/M 16.2 (b)" which is a notice to the Collector that the merchandise is dutiable under paragraph 225 at a rate depending upon the value.·

The merchandise actually consisted of 5 cases containing 250,000 pieces or 20,833⅓ dozen of parts of spectacle frames known as metal temple cores, and was valued at approximately 5.6 cents per dozen cores.

These metal temple cores are dedicated to use as parts of spectacle frames.

T. S. Foulkes imported this merchandise for the purpose of selling and delivering it to the Bausch & Lomb Optical Co. of Rochester New York a manufacturer and distributor of a complete line of optical and ophthalmic products.

T. S. Foulkes did sell and deliver this merchandise to the Bausch & Lomb Optical Co.

Bausch & Lomb Optical Co. bought this merchandise from Foulkes for the sole purpose of using it as parts of the spectacle frames which it was manufacturing.

This merchandise was at the time of importation intended to be used solely as parts of spectacle frames manufactured by Bausch & Lomb and which frames had a value of not less than $12 per dozen frames factory price.

This merchandise was actually used by Bausch & Lomb solely as parts of spectacle frames manufactured by them and which frames were sold by them at not less than $12 per dozen frames factory price.

At the time this merchandise was·imported into the United States metal temple cores were used only as parts of spectacle frames which were sold in the United States by manufacturers at prices which were substantially in excess of $2.50 per dozen frames wholesale, and were not used in frames selling at less than $2.50 per dozen frames wholesale.

Upon entry the importer paid estimated duties under paragraph 225, at the rate of 20% ad valorem as parts of frames valued at over $2.50 per dozen, (the importer's assumption being that the rate for these parts in paragraph 225 is governed by the value of the frames for which the parts were intended, *i. e.*, over $2.50 per dozen frames). * * *

Upon liquidation the Collector assessed duty under paragraph 225 at 20 cents per dozen cores plus 15% ad valorem as parts of spectacle frames (the collector's assumption being that the rate for the parts was governed by the value of the parts themselves, *i. e.*, not over 65 cents per dozen parts). * * *

The sole question at issue is whether the rate of duty, which is dependent upon value, depends upon the value of the temple cores, namely, 5.6 cents per dozen

cores, or upon the value of the frames of which the cores are a part, namely, substantially in excess of $2.50 per dozen frames wholesale.

The provisions of the paragraph here in question are as follows:

Paragraph 225, Tariff Act of 1930:

Spectacles, eyeglasses, and goggles, and frames for the same, or parts thereof, finished or unfinished, valued at not over 65 cents per dozen, 20 cents per dozen and 15 per centum ad valorem; valued at over 65 cents per dozen and not over $2.50 per dozen, 60 cents per dozen and 20 per centum ad valorem; valued at over $2.50 per dozen, 40 per centum ad valorem.

By virtue of the General Agreement on Tariffs and Trade, T. D. 51802, the rate of duty on spectacles, eyeglasses, and goggles, and frames for the same, or parts thereof, finished or unfinished, valued at over $2.50 per dozen, was reduced from 40 per centum ad valorem to 20 per centum ad valorem.

The plaintiff contends that the rate of duty in this case depends upon the value of the frames of which the temple cores herein are a part, and not upon the value of the cores themselves. The defendant, on the other hand, maintains that the words "valued at" in paragraph 225 here under consideration relate not only to the term "frames" used in the paragraph but also to the language "parts thereof" found in said paragraph.

As a primary proposition it may be stated that the phrase, "or parts thereof," appearing in paragraph 225 of the Tariff Act of 1930 refers only to the provision therein for "and frames for the same," and not to the provision in the first part of the paragraph for "spectacles, eyeglasses, and goggles." See *United States* v. *American Thermo-Ware Co.*, 2 Ct. Cust. Appls. 9, T. D. 31572.

In support of its contention, the plaintiff herein directs our attention to *International Forwarding Co.* v. *United States*, 16 Ct. Cust. Appls. 539, T. D. 43264. There, the merchandise consisted of parts of sewing machines, each part being valued at less than $75. The sewing machines, of which the articles there in question formed parts, were valued at more than $75 each. Paragraph 372 of the Tariff Act of 1922 under consideration provided for "sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem * * *." The importer contended that the rate of duty depended upon the value of the parts themselves. The Government maintained that the rate of duty depended on the value of the machines for which the parts were intended. In holding that the parts, although valued at less than $75 each, were dutiable in accordance with the value of the machine, which was over $75 each, the court stated:

* * * If the Congress intended that the language, "valued at not more than $75 each," in the first part of the provisions, should relate to *parts* of machines, then, of course, it must have been contemplated by the Congress that some of the parts might be more valuable than the machines to which they were to be attached. While there might be an exceptional instance when a *part* of a $75 sewing machine would be worth more than the machine, the occasion would be so exceptional that we are unable to believe that the Congress intended to apply the same limitation of value to *parts* as it did to the complete machines. If this is true of the first part of the quoted provision, it is likewise true of the second.

It is our opinion that the Congress intended to provide for sewing machines valued at not more than $75 each, and for parts thereof not specially provided for, at 15 per centum ad valorem; and that it was intended to provide for sewing machines valued at more than $75 each, and for parts thereof not specially provided for, at 30 per centum ad valorem. This construction, we think, avoids absurd results and is in accord with the purpose of the Congress. [Italics quoted.]

Defendant, accepting the correctness of the decision in the said case, points to the change in language from paragraph 372 of the Tariff Act of 1922, under which the cited case arose, and the present act, which definitely provides that "parts,

not specially provided for * * * shall be dutiable at the same rate of duty as the articles of which they are parts * * *." Government counsel, in his brief, then argues that "No such change of language was made regarding the provisions of paragraph 225." The analogy, suggested by defendant, is without merit herein. The issue now before us was never the subject of previous litigation.

The reasoning employed in the *International Forwarding Co.* case, *supra*, applies with equal force and effect in the present case. Here, as there, the rate of duty is not to be based on the value of the imported parts but rather on the articles (spectacle frames) of which the present merchandise forms an integral part. This construction, like that announced in the cited case, "avoids absurd results and is in accord with the purpose of Congress."

The protest is sustained and judgment will be rendered accordingly.